# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

JUDITH CAROL DIEL, )
 )
      Plaintiff, )
 )
v. ) Case No. CIV-15-1043-F
 )
NANCY A. BERRYHILL, )
Acting Commissioner of )
Social Security Administration, )
 )
      Defendant.[1] )

## REPORT AND RECOMMENDATION

Plaintiff, Judith Carol Diel, seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB). This matter has been referred by United States District Judge Stephen P. Friot for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with this Report and Recommendation.

## I.    Procedural Background

On January 26, 2012, Plaintiff protectively filed an application for DIB. *See* Administrative Record (AR) [Doc. No. 11], 16. The Social Security Administration (SSA) denied the application initially and on reconsideration. AR 72, 74. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated February 26, 2014. AR 13-30. The Appeals Council denied Plaintiff's request for review. AR 1-5. Thus, the decision of the

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill, Acting Commissioner of Social Security Administration, is hereby substituted as the proper Defendant in this action. *See* https://www.ssa.gov/agency/commissioner.html.

ALJ became the final decision of the Commissioner. Plaintiff seeks judicial review of this final agency decision.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since June 30, 2010, the alleged onset date. AR 18.

The ALJ then determined Plaintiff had the following medically determinable impairments: gout; gastroesophageal reflux disease; hypothyroidism; kidney disease; chest pain with arterial stenosis, atrial fibrillation, and hypertension; hyperlipidemia; major depression; and generalized anxiety disorder and social phobia. AR 18-19. At step two, however, the ALJ determined Plaintiff did not have a severe impairment. AR 19-26. The ALJ concluded, therefore, Plaintiff was not disabled for purposes of the Social Security Act. AR 26.

## III. Issue Presented for Judicial Review

Plaintiff contends the ALJ's finding at step two—Plaintiff's impairments were not severe—is legally insufficient and not supported by substantial evidence. Pl.'s Opening Brf. (Pl.'s Brf.) [Doc. No. 17], 12-16.[2] Because the ALJ erred in his analysis of the severity of Plaintiff's mental impairments, it is recommended that the ALJ's decision be reversed and the case remanded.

## IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

---

[2] Page references to briefs are to the CM/ECF page number.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V.     **Analysis**

At step two of the sequential analysis, the ALJ must determine whether a claimant for social security benefits has a severe medically determinable physical impairment or medically determinable impairments which are severe when considered in combination. 20 C.F.R. § 404.1520. In order to make a finding of not disabled at step two, a claimant's "slight abnormality or a combination of slight abnormalities" must have "no more than a minimal effect on an individual's ability to . . . perform basic work activities." SSR 85-28, 1985 WL 56856, at *3; *see also* 20 C.F.R. § 404.1521(a). Although the presence of a condition alone is not enough to meet the severity standard, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), a plaintiff must only meet a "de minimus" standard to show an impairment is severe. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). In other words, "[s]tep two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition

3

of disability.'" *Lee v. Barnhart*, 117 F. App'x 674, 677 (10th Cir. 2004) (unpublished) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring)).

In the instant matter, the ALJ found Plaintiff had both physical and mental impairments. AR 18-19. While Plaintiff asserted error regarding the ALJ's analysis of her physical impairments, remand is recommended on the basis of the ALJ's treatment of Plaintiff's mental impairments alone. In order to determine the severity of mental impairments, the ALJ must follow a special technique. *See* 20 C.F.R. § 404.1520a (outlining process in which the ALJ determines whether a claimant has medically determinable mental impairments, and rates degree of functional limitation resulting from such impairments). This special technique, however, considers neither the amount nor the type of treatment in determining the severity of a mental impairment. Referring to the special technique regulations, the Tenth Circuit stated in an unpublished decision:

> [T]he regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination. This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations. Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations.

*Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (emphasis in original) (unpublished) (addressing mental impairment).

Utilizing the special technique, the ALJ found mild limitations in daily living, social functioning, and concentration, as well as no episodes of decompensation. AR 25-26. Such a finding generally supports a conclusion that the impairments are not severe. *Id.* at § 404.1520a(d)(1). However, the ALJ did not limit himself to the special technique in determining that Plaintiff's mental impairments were not severe. The ALJ also considered the absence of mental health treatment in reaching his conclusion:

4

> Overall, given the opinion evidence and *the absence of current mental health treatment*, and as determined below in the analysis of the "paragraph B" criteria, the record reveals that the claimant displayed little in the way of any limitations due to her mental impairments.

AR 25 (emphasis added).³ The ALJ's consideration of such evidence is not proper under *Grotendorst*.

What is more, the ALJ also considered both the amount and type of treatment when addressing the GAF scores assessed by Plaintiff's treating and examining doctors:

> The undersigned emphasizes that the GAF Scale score represents a snapshot of functioning at a given time. However, here there is considerable variability in the GAF assessments in the record, *but an absence of consistent mental health treatment*.⁴ Therefore, the undersigned does not accord determinative weight to the GAF assessments issued by the treating and examining source as evidence to show the severity of symptoms and functional limitation without more evidence to show the impact of appropriate treatment and medications.

---

³ In *Grotendorst*, the ALJ did not apply the special technique at all. *Grotendorst*, 370 F. App'x at 882. At least one district court, however, found error when the ALJ considered the amount of treatment and attempted to utilize the special technique. *See Perez v. Colvin*, No. 13-CV-02914-MEH, 2014 WL 5473751, at *10-12 (D. Colo. Oct. 29, 2014).

⁴ The Court notes that the finding of an absence of consistent mental health treatment appears to be in conflict with the record. The ALJ specifically addressed the fact that Dr. Richard A. Rivers, Plaintiff's primary care physician, diagnosed Plaintiff with depression, citing an August 16, 2010 treatment note. AR 20, 254. The ALJ further referenced Dr. Arnold's note (from June 13, 2011) that Dr. Rivers prescribed Pristiq for Plaintiff's depression. AR 22, 386. The ALJ also found that Dr. Rivers prescribed the antidepressant Effexor in an October 23, 2013 treatment note. AR 20, 365-367. Again, whether a claimant receives treatment from a mental health specialist is not determinative of a severe impairment. *See Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (unpublished) ("[W]e have found no case authority requiring [plaintiff] to obtain medical treatment from such a [mental health] specialist before an ALJ can find that she has a severe mental impairment.").

AR 22 (emphasis added). The GAF scores assessed by Plaintiff's doctors indicate the possibility of impairment greater than the mild limitations assessed by the ALJ in the special technique,[5] but the scores were discredited based on the amount of mental health treatment received, information that should not be considered to determine the severity of a mental impairment.[6]

Given that the ALJ improperly relied on the type and amount of mental health treatment when making the severity determination, remand is appropriate.[7]

## VI. Conclusion

The ALJ erred by considering the amount of mental health treatment in determining whether Plaintiff's mental impairments were severe. On remand, the ALJ should evaluate the severity of Plaintiff's mental health impairments without considering the amount of mental health

---

[5] A GAF score is "a subjective determination based on a scale of 1–100 of the clinician's judgment of the individual's overall level of functioning." *Salazar v. Barnhart*, 468 F.3d 615, 624 n.4 (10th Cir. 2006). Dr. Sarah Miller Coats assigned Plaintiff a GAF score of 60. AR 295. Dr. Robert Arnold assessed Plaintiff with a 50 GAF score, indicating "the presence of serious symptoms." AR 22, 386. "[A] GAF score of 51–60 indicates moderate symptoms, such as a flat affect, or moderate difficulty in social or occupational functioning[,] . . . [and a] GAF score of 41–50 indicates [s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning, such as inability to keep a job." *Langley*, 373 F.3d at 1122 n.3 (internal quotation omitted).

[6] Defendant cites 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v) in support of her position that the ALJ's properly considered whether Plaintiff sought consistent mental health treatment. Brf. in Supp. of the Comm'rs Dec. (Def.'s Brf.) [Doc. No. 23], 14. The regulation cited (as well as the cases cited) address factors proper for assessing a claimant's credibility. Here, remand is based on the ALJ's finding of severity—while it may be proper to consider treatment in a credibility determination, it is clear that a severity determination may not be based on the type and amount of treatment as the ALJ found.

[7] The ALJ's conclusion may be different after conducting a proper analysis, therefore the Court does not consider whether the ALJ's error was harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("[T]o the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action . . . .").

treatment received for such impairments. Because of the remand, the Court does not reach the merits of Plaintiff's remaining claims as those issues "may be affected by the ALJ's treatment of the case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

The Court also notes the ALJ accorded little weight to Plaintiff's cardiologist, Dr. Branislav Schifferdecker, but accorded great weight to the state agency medical consultant. AR 24-25. The state agency medical consultants reviewed the record prior to the onset of Plaintiff's cardiac impairments. *Compare* AR 314 (initial review of state agency medical consultant on April 25, 2012) and AR 325 (reconsideration on October 24, 2012) *with* AR 20 (claimant presented to primary care physician with chest pain on October 7, 2013), AR 21 (first visit to cardiologist on November 5, 2013), and AR 43 (testimony from Plaintiff that heart condition came about more recently). The ALJ accorded little weight to Dr. Schifferdecker in part because his opinion was inconsistent with the opinion of the state agency. AR 25. The state agency medical consultant's assessments were given "greatest weight" in part because they were "consistent with the medical evidence." AR 25. There appears to be a disconnect here—Dr. Schifferdecker's opinion of significant limitations on basic work activities were considered inconsistent with state agency consultants who did not have the opportunity to review the impairments Dr. Schifferdecker diagnosed. As such, the Court encourages the ALJ to obtain an updated examination or report as to the cardiac impairments. *See Chapo v. Astrue*, 682 F.3d 1285, 1292-93 (10th Cir. 2012) (encouraging ALJ to obtain an updated exam or report when the ALJ relied on a patently stale opinion of an agency examining consultant).

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Commissioner's decision be reversed and the case be remanded for further administrative proceedings consistent with the recommendation set forth herein.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by February 16, 2017. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 2nd day of February, 2017.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE